UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KURT A. BURKHARDT,

       Petitioner,

v.

       Case No. 1:06-cv-154
       Hon. Robert J. Jonker

SHIRLEE HARRY,

       Respondent.

_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.    Background**

Petitioner's conviction arose from the forced entry of a home that occurred on August 19, 2002 in Sturgis, Michigan. Trial Trans. I at 73-84. A jury convicted petitioner of first-degree home invasion, M.C.L. § 750.110a(2). *People v. Kurt Alan Burkhardt*, No. 255396 (Mich. App. Sept. 20, 2005). He was sentenced as a second habitual offender, M.C.L. § 769.10, to seven to twenty-nine years imprisonment, and was ordered to pay costs and make restitution. *Id.*

Petitioner presented the following issues in his direct appeal to the Michigan Court of Appeals:

    I.    Was [petitioner] denied his state and federal constitutional rights to a fair and impartial trial by the prosecutor's misconduct, including asserting facts not in evidence, commenting on absent evidence, and vouching for a police witness during closing argument. Alternatively, trial counsel was ineffective for failing to object?

> II. Is [petitioner] entitled to resentencing where he was sentenced as a second habitual offender but his prior record did not make him subject to habitual offender enhancement. Additional, his due process right to be sentenced based on accurate information was violated and trial counsel rendered ineffective assistance of counsel in failing to object to the improper enhancement?
>
> III. Did the court err in ordering [petitioner] to pay for the installation of an alarm system and a one-year service fee as restitution for the homeowner's emotional anxiety without statutory authority to do so?

*See* docket no. 23.

The Michigan Court of Appeals affirmed petitioner's conviction, but vacated, in part, the judgment of sentence and remanded for resentencing. *People v. Kurt Alan Burkhardt,* No. 255396, slip op. at 1. The Court of Appeals agreed with petitioner that he was improperly sentenced as a second habitual offender under M.C.L. § 769.10, because his prior conviction was a misdemeanor at the time of the offense. *Id.*, slip op. at 2. On November 7, 2005, the trial court resentenced petitioner to a term of 7 to 20 years imprisonment, with credit for 1112 days served. *See* docket no. 17.

Petitioner filed an application for leave to appeal to the Michigan Supreme Court raising two claims:

> I. Was [petitioner] denied his state and federal constitutional rights to a fair and impartial trial by the prosecutor's misconduct, including asserting facts not in evidence, commenting on absent evidence, and vouching for a police witness during closing argument? Alternatively, was trial counsel ineffective for failing to object?
>
> II. Did the court err in ordering [petitioner] to pay for the installation of an alarm system and a one-year service fee as restitution for the homeowner's emotional anxiety without statutory authority to do so?

*See* docket no. 24. In a "Counter-Statement of Questions Involved," the government contested the Court of Appeals remand for resentencing. *Id.* The Michigan Supreme Court denied the application. *People v. Kurt Alan Burkhardt*, No. 129886 (January 31, 2006).

    Petitioner raised the following issues in his amended habeas petition:

I.  Prosecutorial misconduct and ineffective assistance of counsel.

  The prosecutor's misconduct including asserting facts not in evidence, commenting on absent evidence, and vouching for a police witness during closing arguments. Alternatively, trial counsel was ineffective for failing to object.

II.  Unconstitutional sentencing regarding restitution.

  The court erred in ordering petitioner to pay for the installation of an alarm system and a one-year service fee as restitution for the homeowner's emotional anxiety without statutory authority to do so.

*See* docket no. 5. The court subsequently granted petitioner's motion to withdraw Issue II. *See* Order (Nov. 17, 2006) (docket no. 28). Accordingly, petitioner's only remaining claims for habeas review are prosecutorial misconduct and ineffective assistance of counsel.

    **II.**  **Standard of review under 28 U.S.C. § 2254**

    Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Petitioner has met the exhaustion requirement as to all of his claims.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### III.     The state court's resolution of petitioner's claims

The Michigan Court of Appeals addressed petitioner's claims of prosecutorial misconduct, as well as his claim that trial counsel was ineffective for failing to object to these remarks, as follows:

> Defendant argues that he was denied a fair trial because the prosecutor made improper comments during closing arguments that suggested the existence of a videotape showing defendant's confession, where at trial the only evidence of this confession was the testimony of an investigating detective who interrogated defendant, and which comments suggested that the police had fully investigated and eliminated other identified suspects, where at trial there was no such supporting evidence. Defendant also argues that counsel was ineffective for failing to object to the improper commentary.
>
> Defendant failed to object to the comments at trial; therefore, the issue is not preserved for appeal. *People v. Watson*, 245 Mich. App 572, 586; 629 NW2d 411 (2001). Accordingly, we review for plain error affecting the defendant's substantial rights. *People v. Carines*, 460 Mich. 750, 763-764; 597 NW2d 130 (1999). The plain error must result in prejudice to the defendant, i.e., "that the error affected the outcome of the lower court proceedings." *Id.* at 763. Additionally, once an appellate court finds plain error affecting the defendant's substantial rights, reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence. *Id.*
>
> Furthermore, with respect to a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that that [sic] the deficient performance prejudiced the defense. *People v. Carbin*, 463 Mich. 590, 600; 623 NW2d 884 (2001). To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *Id.* (citation omitted).
>
> A prosecutor may argue all reasonable inferences from the evidence but may not make statements of fact unsupported by the evidence or mischaracterize the evidence presented. *Watson*, *supra* at 588. Prosecutorial misconduct is reviewed on a case by case basis, and the prosecutor's remarks are examined in context to determine if the defendant was denied a fair and impartial trial. *Id.* at 586.

>        Although the prosecutor's remarks were inappropriate as there was a lack of supporting evidence, on careful examination of the record, we find that defendant has failed to meet his burden of establishing prejudice, either for purposes of the plain-error test or the claim of ineffective assistance of counsel.  The prosecutor's comments were extremely brief and not repeated, defense counsel specifically argued to the jury that the police witness did not testify that other suspects were investigated and eliminated, the trial court instructed the jury that "[t]he lawyers' statements and the arguments are . . . not evidence," and there was sufficient evidence connecting defendant to the crime.  Reversal of the conviction is unwarranted.

*People v. Kurt Alan Burkhardt*, No. 255396, slip op. at 1-2.

The Michigan Court of Appeals' "plain error" review of the prosecutorial misconduct claim is considered to be a procedural default of that claim for purposes of federal habeas review. *See Paprocki v. Foltz*, 869 F.2d 281, 284-285 (6th Cir. 1989) (limited review of an issue to prevent manifest injustice does not constitute a waiver of the procedural default).  Respondent properly contends that these claims are procedurally defaulted and not subject to habeas review.  However, because these prosecutorial misconduct claims, and petitioner's related claim of ineffective assistance of trial counsel, will require a rather lengthy procedural default analysis, the court will simply review the merits of petitioner's claims.[1]

    **IV.**    **Discussion**

    **A.**    **Prosecutorial misconduct**

The court considers the prosecutor's remarks within the context of the entire trial to determine whether any improper remarks resulted in prejudicial error.  *Cristini v. McKee*, 526 F.3d

---

[1] "[J]udicial economy sometimes dictates reaching the merits if the merits are more easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1161-62 (8th Cir. 1999) (internal citations omitted), *citing Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997).  *See also*, *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999) (magistrate judge properly decided the case on the merits where procedural default issue raised more questions than the merits of the case); *Johnson v. Warren*, 344 F.Supp.2d 1081, 1089 (E.D. Mich 2004) (given complexity of determining procedural default, court addressed claims on the merits).  *Cf.* 28 U.S.C. § 2254(b)(2) (permitting a federal court to deny a habeas petition on the merits notwithstanding the applicant's failure to exhaust state remedies).

888, 901 (6th Cir. 2008). "Prosecutors can argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Id.* Prosecutors cannot offer their opinions as to credibility of a witness or the guilt of a defendant, and they cannot discuss any purported facts not introduced into evidence. *Id.* However, even if the prosecutor's conduct was improper or even universally condemned, the court can provide federal habeas corpus relief only if the statements were so flagrant and egregious as to deny the petitioner a fundamentally fair trial. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002). "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotations omitted).

"When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir.1993) (*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982)). The court should consider four factors in determining whether a prosecutor's improper remarks are so flagrant as to rise to the level of a due process violation: (1) the likelihood that the prosecutor's remarks tended to mislead the jury or to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) whether the remarks were accidentally or deliberately placed before the jury; and (4) the total strength of the evidence against the accused. *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005).

### 1. The evidence

The prosecution's case was built upon two main sources of evidence: James Menter's eyewitness account and petitioner's two confessions to Detective Picketts. James Menter gave the following testimony. On August 19, 2002, James and the owner's son, Jared Ailstock, walked to the Ailstock house after school. Trial Trans. I at 73-74. When the two boys approached the house, they saw a black, older style Honda in the driveway. *Id.* at 75. James testified that the door leading from the garage to the house was broken, and it appeared that someone had kicked the door in. *Id.* at 75-76. When James said "Hello," a person in the house said "Jeremy, someone's here." *Id.* at 76-77. One of the men breaking into the house had a crowbar and swung it at James. *Id.* at 77. James described the assailant as relatively tall, weighing about 175 to 200 pounds, wearing a "yellow fox racing shirt" and sporting a blond goatee. *Id.* at 78. Petitioner ordered James to get down on the ground and drove away with the other man. *Id.* at 81-82. During trial, James identified petitioner as the man with the crowbar, stating that he was "pretty certain" that petitioner was "the man that broke into the house." *Id.* at 78.

Michael Scott, a detective sergeant with the Michigan State Police, testified that on October 24, 2002, he interviewed petitioner regarding a home invasion burglary that occurred in LaGrange County, Indiana. *Id.* at 140-42. Petitioner told Detective Scott that he had an argument with his girlfriend, went driving into Indiana, and picked up a hitchhiker named "Rob" who offered petitioner $20.00 for a ride home. *Id.* at 143-44. Rob directed petitioner to a residence and entered the house. *Id.* at 144-45. After some period of time, petitioner left his car and walked around the house. *Id.* at 145. Another car pulled into the driveway and two women were standing outside of the second car. *Id.* Petitioner may have had a conversation with the women, went back to his car,

drove away and then saw Rob walking on the road. *Id.* He picked up Rob and dropped him off at an intersection. *Id.* When asked about a burglary in the Sturgis area, petitioner thought he stopped at a house in the area but did not recall having a confrontation with a homeowner. *Id.* at 147-48.

Guy Picketts, a detective with the Calhoun County Sheriff's department, interviewed petitioner twice about the crime.[2] Detective Picketts testified that during an interview on October 30, 2002, petitioner indicated that he and a man named Dallas Blankenship had gone to the Sturgis area, that they broke into a home, that nothing was taken, that they were surprised by the homeowners and that they fled the scene in a 1998 Honda which was colored "plum" or "dark plum." Trial Trans. I at 103, 108-09. At the time of the interview, Picketts described petitioner as 23 years old, weighing about 175 pounds and having a blond goatee. *Id.* at 113. Petitioner stated that at the time of the burglary, he was wearing a "yellow fox racing shirt." *Id.* at 113-14. Picketts met with petitioner again on November 1, 2002. *Id.* at 114. Petitioner gave a similar account during the second interview, with the added detail that the shirt came from his girlfriend. *Id.* at 113, 115-16.

Petitioner testified in his own defense at trial. Trial Trans II at 158-78. Petitioner testified that when he spoke to Detective Picketts at the Calhoun County Jail, he was trying to tell Picketts about the burglary that occurred in LaGrange County, Indiana. Trial Trans. II at 159-60. Petitioner admitted that he went to Sturgis to buy methamphetamines and was using methamphetamines at the time of the burglary, and that the drugs interfered with his ability to recall times, dates and places. *Id.* at 160-65. Petitioner denied that he knew a person named "Jeremy" or

---

[2] Petitioner was in the Calhoun County Jail at the time on an unrelated charge.

9

that he ever drove a black Honda. *Id.* at 162. When asked if his plum-colored Honda was frequently mistaken for black, petitioner responded "No, not really." *Id.* at 175-76.

Finally, the prosecutor recalled Detective Picketts as a rebuttal witness, at which time Picketts testified that he reviewed a videotape of the interview:

> Q. And did you check the accuracy of your recollection of the report by reviewing the videotape as well?
>
> A. Yes, sir.
>
> Q. Was it accurate?
>
> A. Yes, sir.

Trial Trans. II at 180.

### 2. The prosecutor's remarks regarding Detective Picketts

First, petitioner contends that the prosecutor improperly vouched for Detective Picketts' credibility by referring to a videotape of petitioner's interview. In closing argument, the prosecutor said that the most important contested issue in this case was the identity of the individuals who committed the home invasion. Trial Trans. II at 7. The prosecutor pointed out that both petitioner and the person who committed the crime in Sturgis had blond goatees, are about the same weight, and about the same age (i.e., 18 to 22). *Id.* In addition, James Menter testified that he was pretty certain that petitioner was the perpetrator who broke into the house and threatened him with a crowbar. *Id.* at 7-8. Petitioner confessed to breaking into a house in the Sturgis area. *Id.* at 8. This was in addition to a separate crime committed in Indiana as petitioner confessed to Detective Scott . *Id.* It was in this context that the prosecutor made the remark regarding Officer Picketts' use of the videotape as follows:

> These detectives are careful, methodical people. It's all on videotape. When you say to Guy Picketts, you will never be able to see that videotape, and the Judge can explain to you after you come to your verdict why you never can see that, but you can't [sic]. But the detective took notes, dictated a report and reviewed and signed a report, reviewed the video tape, reviewed all that before he told you what he believed to be the truth. And he is professional enough to be careful in that testimony and to be accurate.

Trial Trans. II at 16.

"Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the [prosecutor] behind that witness." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). Contrary to petitioner's assertion, it does not appear that the prosecutor improperly vouched for Detective Picketts' credibility, but rather the prosecutor improperly referred to matters not in evidence when he provided an explanation for the absence of the videotape.

After reviewing the four factors as set forth in *Bates*, the court concludes that the remarks regarding the videotape did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181. While the remarks were deliberately placed in front of the jury during closing argument, they were brief and isolated. The prosecutor did not engage in extensive argument on this issue. Indeed, as the transcript reflects, it is rather difficult to understand portions of the prosecutor's brief argument regarding the videotape. Next, the prosecutor presented considerable evidence linking petitioner to the crime. James Menter's eyewitness testimony placed petitioner, wearing a yellow fox racing tee shirt, at the scene of the crime. Petitioner's two confessions to Detective Picketts acknowledged that he broke into a house in the Sturgis area while wearing a yellow fox racing tee shirt. Petitioner's main point, i.e., that

Detective Picketts misunderstood the substance of his two confessions, is not particularly persuasive.[3]

Finally, it does not appear that the prosecutor's statement misled the jury or prejudiced petitioner. The prosecutor's statement regarding the videotape is based upon Detective Picketts' testimony that he reviewed the videotape to check the accuracy of his recollections regarding petitioner's confessions. Petitioner's counsel cross-examined Detective Picketts three times with respect to the confessions. Trial Trans. II at 117-24, 134-35, 178-81. In addition, the trial court instructed the jury that the lawyers' statements and arguments, as well as what each lawyer may "think," are not evidence. Trial Trans. II at 30-31. While not explicitly given as curative instructions for the prosecutor's remarks, these general instructions were sufficient to prevent the jury from giving any evidentiary weight to the prosecutor's remarks. For these reasons, the prosecutor's remarks regarding the videotape did not rise to the level of a due process violation. Accordingly, petitioner is not entitled to habeas relief on this claim.

**3.    The prosecutor's remarks regarding anonymous tips**

---

[3] Counsel laid out his theory of the case in pertinent part as follows:

This case comes down to this, and it's difficult, you know. I'm in a position where I don't like to be. I've got a defendant who has admitted to troopers that he was involved in a B & E in Indiana, LaGrange County, just over the border. When he talked to Guy Picketts, he was referring to the Indiana case, not anything in this county.

You have to listen, You have to understand what's being said by the witnesses. They will not identify Mr. Burkhardt. They will not identify Mr. Burkhardt's car. It's only Guy Picketts and his misapprehension of what Mr. Burkhardt was talking about that brings us here today. I think after you've had a chance to listen to the witnesses, you'll realize that this was, essentially, a rush to judgment or some way to close a file. It has nothing to do with a search for truth or reality. Thank you.

Trial Trans. I at 51.

In closing argument, defense counsel referred to an anonymous tip made to Detective Scott:

> Let's look at what happened here. There was a burglary where two gentlemen were in the house. Jeremy heard one gentlemen in the house say --
>
> **THE COURT:**   You mean Jared?
>
> I mean Jared. "Jeremy, they're here" or something to that effect. On 9-13 of the same year, approximately a month after this happened, a phone call is made to Detective Scott saying "I know who did this. It was Joey Clipfell and Jeremy Shook. They're cousins and they drive a black Honda." Why isn't Joey Clipfell sitting at this table? Why isn't Jeremy Shook sitting at this table? The detective knew a month after the incident who it was.

Trial Trans. II at 17-18.

On rebuttal, the prosecutor responded to defense counsel's argument:

> [Defense counsel] stresses an anonymous tip naming a different Jeremy, who had a black Honda. There are tips all the time, anonymous tips are almost always just somebody out to get somebody. They don't really amount to much, but they processed it and eliminated them as a suspect and they went on. Mr. Burkhardt was a suspect before he confessed to Guy Picketts, remember?

*Id.* at 26.

A prosecutor is allowed to provide a reasonable response to issues raised in defense counsel's closing argument:

> Under the "invited response" rule, a "reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo." *United States v. Young*, 470 U.S. 1, 11-12, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985). "[I]f the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction." *Id.* at 12-13, 105 S. Ct. 1038.

*United States v. Henry*, 545 F.3d 367, 381 (6th Cir. 2008). Here, the prosecutor's brief response on rebuttal appeared to do no more than "right the scale" on the anonymous tip issue. *See generally*, *United States v. Hurst*, 951 F.2d 1490, 1502 (6th Cir. 1991) (prosecutor could respond to attacks on

credibility of the government's main witness by explaining his efforts to ensure a full and honest disclosure from the witness). Given the strength of the government's case, and the court's instructions advising the jury not to consider the lawyers' arguments as evidence, it appears to the court that these brief remarks regarding an anonymous tip did not rise to the level of a due process violation. Petitioner is not entitled to habeas relief on this claim.

### B. Ineffective assistance of counsel

Finally, petitioner contends that his trial counsel was ineffective for failing to object to the alleged incidents of prosecutorial misconduct. In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 690. "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original). Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

As previously discussed, the prosecutor's brief and isolated remarks did not amount to prosecutorial misconduct. While these remarks were arguably improper, there was no constitutional violation. Under these circumstances, petitioner's trial counsel would have no basis for asserting an objection for prosecutorial misconduct. "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999). *See Lilly v. Gillmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth Amendment does not require counsel . . . to press meritless issues before a court"). In addition, counsel's failure to object to these isolated remarks made during closing argument could be construed as a trial strategy, perhaps, for example, a reluctance to drawn attention to the remarks. "[T]he Constitution does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134 (1982). Rather, experienced trial counsel use objections in a tactical manner, having learned "that objections to each potentially objectionable event could actually act to their party's detriment." *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006). Furthermore, even if counsel's failure to object during closing argument was viewed as deficient, for the reasons as stated in § IV.A., petitioner was not prejudiced by counsel's inaction.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

## V. Recommendation

I respectfully recommend that the habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated: January 27, 2009 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge




ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).